UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **DEUTSCHE BANK NATIONAL TRUST COMPANY,** | ) ) ) |
| *Appellant,* | ) ) |
| v. | ) **Case No.: 1:23-cv-1210-LCB** ) ) |
| ***ROCCO J. LEO,** as trustee of the bankruptcy estate of Irvin Randal Karr*, | ) ) ) ) |
| *Appellee.* | ) ) |

## MEMORANDUM OPINION & ORDER

Deutsche Bank National Trust ("Deutsche Bank") appeals the Bankruptcy Court's grant of summary judgment in an adversary proceeding in favor of the Bankruptcy Estate. (Doc. 1). For the reasons explained herein, this Court will affirm the judgment Bankruptcy Court.

### I. BACKGROUND

The parties generally agree on the relevant facts. Given the complexity and length of this action, for the sake of simplicity and brevity, the Court discusses the facts at a broad level. In 2000, Mr. Irvin "Randy" Karr and Mrs. Dortha Karr (collectively, "The Karrs") purchased a new home (the "Property") and a deed was executed by the sellers conveying the property to them as joint tenants with right survivorship (the "original deed"). (Doc. 9 at 14; Doc. 12 at 10). The Karrs financed

the purchase of their home with two mortgages. (Doc. 9 at 14; Doc. 12 at 10). In 2001, the Karrs wished to remove Irvin Karr's name from the deed. (Doc. 9 at 14; Doc. 12 at 10). Thus, the sellers executed a "Corrective Warranty Deed" conveying title to Dortha Karr only. Neither the sellers nor the Karrs realized that both the original deed and the corrective deed contained an error in the description of the property; (Doc. 9 at 14; Doc. 12 at 10).

In 2004, the Karrs executed a new mortgage in favor of Ameriquest, the predecessor to Deutsche Bank, and this is the mortgage that is the subject of this appeal (the "2004 Mortgage"). (Doc. 9 at 15; Doc. 12 at 10). The 2004 mortgage listed only Dortha Karr as the "Borrower." (Doc. 6-41 at 15). While both Randy and Dortha "signed [ ] and initialed each page," (Doc. 9 at 15) (citing Doc. 6-41 at 15–23), only Dortha Karr "signed the Note that created the evidence of indebtedness secured by the mortgage" (Doc. 12 at 10) (citing Doc. 6-47 at 34–35.) Subsequently, the Karrs defaulted on the 2004 mortgage. (Doc. 6-40 at 98–100, 258). The servicer of the loan proposed a loan modification and the Karrs submitted a Financial Information Form designating Dortha Karr as the Borrower and Randy Karr as the co-borrower. (Doc. 6-43 at 15).

As the Karrs negotiated with the loan servicer, they attempted to sell the Property, which uncovered issues with the title. (Doc. 9 at 17). A third deed was

ultimately executed, conveying the property to both Mr. and Mrs. Karr, "vesting each with an undivided one-half interest." (*Id.* at 18) (citing Doc. 6-1 at 61).

Deutsche Bank was assigned the 2004 Mortgage, "conducted a nonjudicial foreclosure of the 2004 Mortgage and purchased the Property at the foreclosure sale with a credit bid." (*Id.*) (citing Doc. 6-47 at 30–33).

> On January 20, 2016, Deutsche Bank filed suit in Marshall County Circuit Court against Mr. and Mrs. Karr (the "Ejectment Action"), asserting a claim for ejectment and arguing that Mrs. Karr had lost her statutory right of redemption because she had failed to timely vacate the Property. *See* Doc. 6-13, at 19. Mrs. Karr argued in her reply that the 2004 Mortgage was not valid, denied that it was assigned to the Bank, claimed that the Bank had no interest in the Property, and asserted other counterclaims and defenses. Doc. 6-13, at 13.
> 
> In response to the Ejectment Action, Mr. Karr petitioned the Bankruptcy Court for the Northern District of Alabama for chapter 7 bankruptcy. Deutsche Bank then removed the Ejectment Action to the Bankruptcy Court. See Doc. 6-14, at 4. As part of the decisions that produced the final judgment leading to this appeal, the Bankruptcy Court granted Mrs. Karr's subsequent motion for remand and abstention concluding the claims and counterclaims in the Ejectment Action were strictly between Mrs. Karr and the Bank and would have no conceivable effect on the estate. Doc. 6-14, at 18-19. The Ejectment Action was remanded and is still pending in the Circuit Court. *Id.*

(Doc. 9 at 18–19).

On March 7, 2022, the Bankruptcy Court granted summary judgment in favor of Rocco J. Leo, the trustee of the bankruptcy estate of Irvin Randal Karr (the "Trustee"). (Docs. 6-52 & 6-53). Deutsche Bank appealed and this Court affirmed the Bankruptcy Court. *Deutsche Bank Nat'l Tr. Co. v. Leo as Tr. of Est. of Karr*, No.

3

1:22-CV-787-AMM, 2023 WL 2783681, at *6 (N.D. Ala. Mar. 3, 2023), *appeal dismissed sub nom. In re Karr*, No. 23-11040, 2023 WL 3676883 (11th Cir. May 26, 2023). Deutsche Bank then appealed to the Eleventh Circuit, which dismissed the appeal for lack of jurisdiction because "[t]he factual underpinnings of the unadjudicated issue of who is entitled to Debtor's interest in the property are intertwined with the unadjudicated issues of whether the property should be sold, and if so, how to distribute the proceeds of such sale." *In re Karr*, 2023 WL 3676883, at *1 (11th Cir. May 26, 2023); (Doc. 6-66). The case was remanded to the Bankruptcy Court to adjudicate the remaining issues.

Subsequently, the Bankruptcy Court authorized the Trustee to sell the Property. (Doc. 9 at 24) (citing Doc. 6-6 at 4). In so doing, the court declined to rule on whether Deutsche Bank's previously conducted foreclosure sale was valid as to Dortha's half-interest. (Doc. 6-67 at 3). The court explained that it did not have jurisdiction to make such a ruling because "[d]etermining the rights between the non-debtors—Dortha and [Deustche] Bank—will have no impact on the estate, does not arise under title 11, and is not a core proceeding under 28 U.S.C. § 157(2)." (*Id.*). Further, the court explained that even if it did have jurisdiction, the "issue will be controlled by state law and will have no pecuniary effect on the estate, and therefore th[e] court should abstain from hearing the claims between Dortha and [Deutsche] Bank pursuant to 28 U.S.C. § 1334(c)(1)." (*Id.*). In its final order, the Bankruptcy

4

Court reaffirmed its holding that the credit sale extinguished at the foreclosure sale yet declined to determine "whether [Deutsche] Bank or Dortha will be entitled to receive the sale proceeds attributed to [Randy Karr's] half-interest in the Property purportedly encumbered by the 2004 Mortgage." (Doc. 9 at 24–25; Doc. 6-68 at 2–3). Deutsche Bank now appeals the Bankruptcy Court's orders. (Doc. 1).

## II. STANDARD OF REVIEW

District courts "have jurisdiction to hear appeals . . . from final judgments, orders, and decrees" of bankruptcy courts. 28 U.S.C. § 158(a). This is Deutsche Bank's second appeal of this case. The Eleventh Circuit dismissed the first appeal in order to avoid piecemeal appeals by the Appellant, explaining that there were unadjudicated issues to be resolved, including "whether the property should be sold, and if so, how to distribute the proceeds." *In re Karr*, 2023 WL 3676883, at *1 (11th Cir. May 26, 2023). As the Bankruptcy Court adjudicated both issues, ordered that the property should be sold, and determined that one-half of the proceeds shall go to the bankruptcy estate, while the other half shall go to whomever the State Court deems appropriate, the Bankruptcy Court's order is properly before this Court.[1]

Questions surrounding the jurisdiction of a Bankruptcy Court are reviewed *de novo*. *Dermer v. Miami-Dade Cnty.*, 599 F.3d 1217, 1220 (11th Cir. 2010). A

---

[1] There is a dispute regarding the timeliness of the Bank's appeal. The Court need not address this issue as even on appeal the Bankruptcy Court is due to be affirmed.

5

bankruptcy court's determinations of law are also reviewed *de novo*. *In re Sublett*, 895 F.2d 1381, 1383 (11th Cir. 1990). A Bankruptcy Court's abstention decision is reviewed for an abuse of discretion, *Seminole Tribe of Fla. v. Stranburg*, 799 F.3d 1324, 1328 (11th Cir. 2015), as is a Bankruptcy Court's "decision to grant or deny equitable relief." *Preferred Sites, LLC v. Troup Cnty.*, 296 F.3d 1210, 1220 (11th Cir. 2002). District courts give deference to a Bankruptcy Court's factual findings in weighing evidence and making credibility judgments and reverse those findings only if they are clearly erroneous. *Id.* at 967. A district court is not "authorized to make independent factual findings." *In re Sublett*, 895 F.2d at 1384.

"Under traditional principles of contract law, the bankruptcy court's interpretation of . . . loan instruments . . . is a legal determination subject to de novo review if the contractual language is unambiguous." *Id.* "Where the language is ambiguous, however, and requires consideration of extrinsic evidence of the actual intentions of the parties, the bankruptcy court's determinations as to those intentions are findings of fact subject only to 'clearly erroneous' review." *Id.* "Furthermore, the initial question whether the contractual language is ambiguous or not is itself a question of law." *Id.*

### III. DISCUSSION

Deustche Bank makes two arguments. First, it argues that the Bankruptcy Court erred by refusing to find that Deutsche Bank's foreclosure sale of the property was valid as to Dortha Karr's one-half. (Doc. 9 at 26). Second, it argues that the Bankruptcy Court "erred in not granting Deustche Bank an equitable lien over the Property or allowing it to enforce said lien against the Trustee." (*Id.* at 38). The Court addresses each of these arguments below.

### 1. The Bankruptcy Court Did Not Err in Finding that Deutsche Bank Did Not Have an Equitable Lien on the Property.

Deutsche Bank's second chronological argument, that the Bankruptcy Court erred in finding that Deutsche Bank did not have an equitable lien on the property, must be addressed first, as it is dispositive in this case.

"The basic federal rule in bankruptcy is that state law governs the substance of claims, Congress having generally left the determination of property rights in the assets of a bankrupt's estate to state law." *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20 (2000) (cleaned up). Under Alabama law, "when a mortgage is invalid due to a technical defect," such as when it "lacks proper attestation or acknowledgement," "equity will give effect to the intent to the parties" and the "mortgage instrument . . . will be given effect as an equitable mortgage." *Cent. Bank of the S. v. Dinsmore*, 475 So. 2d 842, 846 (Ala. 1985). "In order for an equitable mortgage to exist, it is essential that the mortgagor have a mortgageable interest in the property sought to

7

be charged as security; that there be clear proof of the sum which it was to secure; that there be a definite debt, obligation or liability to be secured, due from the mortgagor to the mortgagee; and the intent of the parties to create a mortgage, lien or charge on property sufficiently described or identified to secure an obligation." *Centr. Bank*, 475 So. 2d at 846 (cleaned up).

Deutsche Bank argues that it was entitled to an equitable lien on the property because all the elements of an equitable lien under Alabama law are satisfied. (Doc. 9 at 38–41). According to Deutsche Bank, "Mr. Karr owned a mortgageable interest in the Property," "[t]here is clear proof of Mr. and Mr. Karr's definite debt and obligation to pay Deutsche Bank," and "Mr. and Mrs. Karr agreed the Mortgage would encumber the Property in its entirety, including Mr. Karr's one-half interest." (*Id.*). The argument continues, that "[a]n equitable mortgage exists regardless of any formal deficiencies of the document" such that "Mr. Karr's unacknowledged signature does not completely void the 2004 Mortgage of value, and the Bankruptcy Court erred by not looking to the intent of the parties and upholding the 2004 Mortgage as an equitable lien over the Property." (*Id.* at 42–43).

The Trustee, however, points out the second element is missing because Randy Karr "did not sign the note [and] was not listed as the borrower on the mortgage." (Doc. 12 at 22). Additionally, the Trustee continues that "after the

8

foreclosure of the mortgage on Mrs. Karr's real estate for the full amount of the debt, there is no debt to which an equitable mortgage would attach." (*Id.*).

This Court finds persuasive the previous affirmation of the Bankruptcy Court. As Judge Manasco explained in the first appeal, Deutsche Bank's

> assertions begin from an erroneous premise: that equitable relief flows automatically upon proof of certain elements. Equity is never a "matter of right" and always depends on "the particular circumstances of each case." *1631 Second Ave. N., L.L.C. v. Raine*, 963 So. 2d 71, 75 (Ala. 2007) (cleaned up)." . . . [Here,] [a]lthough the bankruptcy court did not make an explicit finding regarding the Debtor's intent in signing the 2004 Mortgage, the Bank's assertion about his intent— that he signed it "to show his agreement with its terms,"—implicitly acknowledges what the bankruptcy court emphasized throughout its order: the terms of the 2004 Mortgage do not make the Debtor a mortgagor, so the Debtor's agreement with those terms does not establish his intent to mortgage his interest in the Property. So the bankruptcy court could have declined to exercise its discretion to create an equitable mortgage solely on the basis that the Bank failed to prove that the Bank and the Debtor intended to mortgage the Debtor's interest in the Property.

*Deutsche Bank Nat'l Tr. Co. v. Leo as Tr. of Est. of Karr*, No. 1:22-CV-787-AMM, 2023 WL 2783681, at *6 (N.D. Ala. Mar. 3, 2023), *appeal dismissed sub nom. In re Karr*, No. 23-11040, 2023 WL 3676883 (11th Cir. May 26, 2023) (emphasis added) (record citations omitted).

This debt was never Randy Karr's. Deustche Bank fails to demonstrate how, even in equity, "the intent of the parties can be found in an unacknowledged signature, when Mrs. Karr is identified as the borrower and her signature is acknowledged, Mrs. Karr is the only party to the note secured by the mortgage, and

9

the [Bank] foreclosed on only the interest of Mrs. Karr." (Doc. 12 at 24). As such Mr. Karr's interest cannot be encumbered based on the alleged "intent" demonstrated—"[t]he debtor, Mr. Karr, was not the obligor on the note for which this mortgage was security." (*Id.* at 19).

Though there are no new facts since the last appeal, Deustche Bank does acknowledge the additional ground the Bankruptcy Court relied on to find against the existence of an equitable lien on Randy Karr's one-half interest of the Property: Deustche Bank's own negligence. (Doc. 9 at 43). Deustche Bank argues that the requirement "that the creditor not act negligently" simply "does not exist in Alabama law." (*Id.* at 43 (citing Doc. 6-52 at 26)). This is incorrect.

> "[T]he general rule is that if a party becomes remediless at law by his own negligence, equity will leave him to bear the consequence." *Stuart v. Strickland*, 83 So. 600, 603 (Ala. 1919); *see also Meeks v. Meeks*, 18 So. 2d 260, 267 (Ala. 1944) ("It is inherent doctrine of equity jurisdiction that nothing less than . . . reasonable diligence can call courts of equity into activity . . . .") (cleaned up). The bankruptcy court explained in detail how the Bank's negligence and lack of diligence caused the losses that the Bank now wants other creditors to bear. As just one example, the bankruptcy court found that if the Bank had exercised "ordinary due diligence," it would not have "foreclosed [on the 2004 Mortgage] in full satisfaction of its debt, with full knowledge of the state of the title." The Bank did not challenge those findings—even though it accused the bankruptcy court of "scarcely engag[ing] . . . the question of whether [Deustche Bank] had established an equitable lien on the Property," "fail[ing] to consider [its equitable] argument seriously," and basing its decision on "erroneous halfhearted findings."

*Deutsche Bank*, 2023 WL 2783681, at *6.

The Bankruptcy Court provided ample explanation, based in law, to explain its reasoning for its determinations. Therefore, this Cout holds that the Bankruptcy Court did not abuse its discretion in finding that Deustche Bank was not entitled to equitable relief.[2]

### 2. The Bankruptcy Court Did Not Err in Abstaining From Ruling on the Validity of the Foreclosure Sale.

Deutsche Bank argues that the Bankruptcy Court erred in not only abstaining from ruling on *any* effect of the foreclosure sale, but, specifically, it erred in not finding that the foreclosure sale was valid as to Dortha Karr's one-half interest. (Doc. 9 at 26–37). However,

> [T]he Bank made the same argument[s] [regarding the need to establish the validity of the foreclosure] to the bankruptcy court, which rejected the argument . . . [because] the bankruptcy court observed that its decision need not rest on the validity of the foreclosure sale because it made an alternative holding "that the [2004] Mortgage never encumbered the Debtor's interest in the first place."

*Deutsche Bank*, 2023 WL 2783681, at *7 (record citations omitted).

Deutsche Bank argues that "the Bankruptcy Court had jurisdiction to rule on the validity of the foreclosure sale for three independent reasons: (1) the foreclosure is a core proceeding, (2) the validity of the foreclosure is related to the underlying bankruptcy proceeding, and (3) the Bankruptcy Court could exercise supplemental

---

[2] The Court need not address the bona fide purchaser arguments related to equitable relief because the Bankruptcy Court did not abuse its discretion. (*See* Doc. 9 at 45–47; Doc. 12 at 26–27).

jurisdiction over the foreclosure." (Doc. 9 at 29). But regardless of the mechanism Deutsche Bank uses to argue that the Bankruptcy Court had jurisdiction, the arguments hold no weight when looking at the big picture: the decisions regarding the foreclosure sale are rightfully in the hands of the State Court because they involve *solely non-debtors*.

The Bankruptcy Court found that "even if the 2004 Mortgage had covered the Debtor's interest—which the court concludes it did not—the mortgage was extinguished when the Bank bid the entire secured debt in exchange for the conveyance of Dortha's interest at the foreclosure sale." (Doc. 6-52 at 19). The Bankruptcy Court's holding is not only correct, but the logical legal outcome: "[d]etermining the rights between the non-debtors—Dortha and the Bank— will have no impact on the estate, does not arise under [T]itle 11, and is not a core proceeding under 28 U.S.C. § 157(2)." (Doc. 6-67 at 3). This Court agrees with the Bankruptcy Court.

### IV. CONCLUSION

Accordingly, the Court **AFFIRMS** the judgment of the Bankruptcy Court. A final judgment will be entered separately.

**DONE** and **ORDERED** July 9, 2025.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE